### IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

STELLA EDMERSON,         )
                            )
          Plaintiff,    )
                            )
                            ) Case No. CIV-20-430-RAW-KEW
                            )
COMMISSIONER OF THE SOCIAL   )
SECURITY ADMINISTRATION,     )
                            )
          Defendant.    )

### REPORT AND RECOMMENDATION

Plaintiff Stella Edmerson (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1]    Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 41 years old at the time of the ALJ's decision. She has a high school education and past relevant work as a retail sales clerk, cashier, food server, convenience store clerk, casual dining waitress, warehouse worker, and forklift operator. She alleges an inability to work beginning on August 1, 2016, due to limitations resulting from degenerative disc disease of the lumbar and cervical spine, obesity, depression, asthma, generalized anxiety disorder with panic attacks, and bipolar disorder.

## Procedural History

On August 3, 2017, Claimant protectively filed an application for disability insurance benefits under Title II (42 U.S.C. § 401,

*et seq.*) of the Social Security Act and an application for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Her applications were denied initially and upon reconsideration. On July 11, 2019, ALJ David Engel conducted a hearing in Tulsa, Oklahoma, at which Claimant testified. The record was left open at the request of Claimant's representative, and a supplemental hearing was held before ALJ Engel, with Claimant and her representative present, on December 6, 2019. On February 3, 2020, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on September 17, 2020, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light and sedentary work with additional limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) failing to properly evaluate her mental health limitations, and (2) failing

to properly assess the consistency of her complaints with the evidence of record.

### Consideration of Mental Health Limitations

In his decision, the ALJ found Claimant suffered from severe impairments of degenerative disc disease of the lumbar and cervical spine, obesity, and depression. (Tr. 17). He made two RFC determinations, one for the period from August 1, 2016, to February 2, 2019, and another for the period from February 3, 2019, through the date of the decision. For the first period, the ALJ determined Claimant could perform a full range of light and sedentary work with additional limitations. She was unable to climb ladders and scaffolds and she could not work in environments exposing her to unprotected heights or dangerous moving machinery parts. She could understand, remember, and carry out simple instructions in a work-related setting and could interact with co-workers and supervisors under routine supervision. Claimant was unable to interact with the general public more than occasionally, regardless of the type of interaction (in person or by telephone). The ALJ noted that Claimant "was afflicted with symptoms from a variety of sources to include mood disorders and related mental impairments . . . that were of sufficient so as to have been noticeable to her at all times, yet was able to remain attentive and responsive and perform work assignments within the above-cited limitations." (Tr. 21).

After consultation with a VE, the ALJ determined Claimant could perform the representative jobs of hotel housekeeper, sewing machine operator, merchandise marker, document preparer, semi-conductor bonder, and touch-up screener, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 27-28). As a result, the ALJ concluded Claimant had not been under a disability from August 1, 2016, through February 2, 2019. (Tr. 28).

For the time period of February 3, 2019, through the date of the decision, the ALJ determined Claimant was limited to light and sedentary work for lifting, carrying, pushing, and pulling. For walking and standing, Claimant was limited to two hours (combined total) of an eight-hour workday, with regular work breaks. She could sit for a combined total of six hours in an eight-hour workday, with regular work breaks. Claimant could climb ramps or stairs occasionally and bend, stoop, kneel, crouch, and crawl not more than occasionally. She was unable to climb ropes, ladders, and scaffolds, or work in environments exposing her to unprotected heights and dangerous moving machinery parts. Her mental limitations remained the same as for the prior period, with the ALJ noting that Claimant was "afflicted with symptoms from a variety of sources to moderate intermittent pain and fatigue as well as mood disorders and related mental impairments . . . that are of sufficient so as to be noticeable to her at all times, yet

is able to remain attentive and responsive and perform work assignments within the above-cited limitations." (Tr. 28-29).

After consultation with a VE for this time period, the ALJ determined Claimant could perform the representative jobs of document preparer, semi-conductor bonder, and touch-up screener, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 29-30). As a result, the ALJ concluded Claimant had not been under a disability from August 1, 2016, through the date of the decision. (Tr. 30).

Claimant makes several arguments that the ALJ improperly considered her mental impairments. In assessing the "paragraph B" criteria at step three, Claimant argues that the ALJ should have found a marked limitation in the domain of concentrating, persisting, or maintaining pace instead of a moderate limitation. The ALJ discussed the "paragraph B" criteria in the decision, specifically finding that claimant had a mild limitation in understanding, remembering, or applying information, a marked limitation interacting with others, and a moderate limitation adapting or managing herself. (Tr. 19-20). Regarding the domain of concentrating, persisting, or maintaining pace, the ALJ found a moderate limitation, with the following explanation:

> In her ADULT FUNCTION REPORT the claimant reported she was only able to pay attention for 30 minutes (Exhibit 7E, page 6), however, she nevertheless reported she was able to shop in a store for food up to 2 hours (Exhibit 7E, page 5), volunteer at the HUMANE SOCIETY once a week

(Exhibit 7E, [p]age 5), and do laundry at home for up to 4 hours (Exhibit 7F, page 3). She also testified that from July-December 2018 she was able to work full time at a LOVE'S travel stop.

(Tr. 20).

Claimant asserts that the evidence relied upon by the ALJ does not show she can maintain persistence and pace in employment. She points to GAF and CAR scores as evidence that her functioning is marked in the domain. The ALJ, however, did not specifically discuss the GAF or CAR scores, but he indicated that he had considered all the evidence. (Tr. 14). The ALJ was not required to specifically discuss Claimant's GAF or CAR scores. *See Lopez v. Barnhart*, 78 Fed. Appx. 675, 678 (10th Cir. 2003) (noting the failure to discuss a GAF score alone is insufficient to reverse an ALJ's determination of non-disability); *Watkins v. Colvin*, 2017 WL 499684, at *3 (N.D. Okla., Feb. 7, 2017) (unpublished) (discussing GAF and CAR scores and noting that "[t]he court's 'general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter.'"), quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

In any event, the ALJ's determination that Claimant had moderate limitations in concentration, persistence, and pace was supported by the evidence. The ALJ determined the opinion of medical expert Dr. Beth Maxwell was supported by the record, including her testimony that Claimant had moderate limitations in

the areas of concentrating, persisting, or maintaining pace. (Tr. 25, 45).

Claimant also argues that the ALJ failed to account for his finding under the "paragraph B" criteria that she had a marked limitation in interacting with others in the RFC assessment. Although the ALJ determined in his assessment of the "paragraph B" criteria that Claimant had a marked limitation in the area of interacting with others (Tr. 20), he also correctly stated that "[t]he limitations identified in the 'paragraph B' criteria are not an RFC assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following RFC assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (Tr. 20); *see* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *4 (July 2, 1996) ("The adjudicator must remember that the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s)at steps 2 and 3 of the sequential evaluation process.").

Case law also supports that a finding of a limitation for the "paragraph B" criteria does not necessarily translate to a work-related functional limitation for purposes of the RFC assessment.

9

*See, e.g., Beasley v. Colvin*, 520 Fed. Appx. 748, 754 (10th Cir. 2013) (noting that "[t]he ALJ was under no obligation to include limitations in social functioning in [the] RFC based solely on his finding that she had 'moderate difficulties' in social functioning as part of the distinct step-three analysis."). Here, the ALJ assessed Claimant with a marked limitation in interacting with others at step three, and he also included social limitations in the RFC. He provided explanation in the decision for the social limitations included in the RFC, noting Claimant's past work that she carried on for some time allowed for her to interact with co-workers and supervisors under routine supervision and that because she reportedly left the job because of anxiety, she would be unable to interact with the general public more than occasionally. This Court finds no error with the ALJ's decision in this regard.

Claimant next maintains that she cannot perform the job of document preparer identified by the VE in response to the ALJ's second RFC, because it requires a reasoning level of three which is inconsistent with an RFC to understand, remember, and carry out simple instructions. She contends that the VE's testimony conflicts with the Dictionary of Occupational Titles ("DOT") and the ALJ failed to reconcile this conflict. Claimant asserts that the remaining jobs available to the Claimant if the document preparer position is excluded does not constitute a significant number of jobs available in the national economy.

In both RFC determinations, the ALJ limited Claimant "to understand, remember, and carry out simple instructions in a work-related setting[.]" (Tr. 21, 29). The ALJ included the limitation in the hypothetical questions presented to the VE, and relating to the ALJ's second RFC, the VE testified Claimant could perform the sedentary jobs of document preparer, semi-conductor bonder, and touch-up screener. (Tr. 30, 54-56, 57-58). The ALJ specifically discussed with the VE the document preparer's reasoning level of three and Claimant's ability to do that job when limited to simple instructions, and the VE testified that she did not view the reasoning level of three as inconsistent with unskilled work, as it required a reasoning level at the seventh or eight grade level. (Tr. 56-57); *but see Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (finding that jobs with a reasoning level of three are inconsistent with an RFC that limited the claimant to "simple and routine work tasks" and that level-two reasoning appears "more consistent" with such an RFC). Moreover, the ALJ also failed to explain in the decision how the conflict was resolved. *See* Soc. Sec. Rul. 00-4P, 2000 WL 1898704 (Dec. 4, 2000).

Even if the VE's testimony is inconsistent with the DOT for the document preparer position, regarding the second RFC, the VE also testified Claimant could perform the jobs of semi-conductor bonder with 21,000 jobs in the national economy and touch-up screener with 37,000 jobs in the national economy, for a total of

11

58,000 jobs. (Tr. 30, 54-56, 57-58). Claimant appears to acknowledge this, but she argues that when the document preparer position is eliminated, there are not enough jobs available in the national economy to be significant.

"[T]he issue of numerical significance entails many fact-specific considerations requiring individualized language as applied to a particular claimant's factual situation." *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004), quoting *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). "[T]he number of jobs that contributes to the 'significant number of jobs' standard looks to the national economy-not just a local area." *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (citation omitted). As this Court has ruled in the past, given the imprecise nature of this analysis, this Court is unwilling to find that 58,000 jobs represents an insignificant number of jobs. *See Rogers v. Astrue*, 312 Fed. Appx. 138, 141 (10th Cir. 2009) (testimony by vocational expert of 11,000 hand packager jobs in the national economy could be relied upon by the ALJ as substantial evidence to support a finding of non-disability); *see also Fox v. Colvin*, 2015 WL 5178414, at *4 (W.D. Okla., Sept. 3, 2015) (unpublished) ("The *Rogers* [*v. Astrue*] decision came out the same year as *Raymond*, and that court implicitly found, as a matter of law, without engaging in a multi-factor analysis, that 11,000 jobs in the national economy is significant. The Court is persuaded by *Rogers* and finds

12

that 32,000 utility tractor jobs in the national economy is significant."). Thus, considering only the jobs of semi-conductor bonder and touch-up screener, the ALJ had substantial evidence to support his determination that there was a significant number of jobs for Claimant in the national economy.

### Evaluation of Symptoms

Claimant further takes issue with the ALJ's evaluation of her reported symptoms, arguing that the ALJ did not properly account for her function report or the third-party function report completed by her son. She also asserts that the ALJ failed to support his consistency determination with evidence from the record, including a discussion of the consistency factors.

Deference must be given to an ALJ's evaluation of Claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. Any findings by the ALJ "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ's decision "must contain specific reasons for the weight given to the [claimant's] symptoms, be consistent with and supported by the evidence, and be clearly articulated so the [claimant] and any subsequent reviewer can assess how the [ALJ] evaluated the [claimant's] symptoms." Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017). However,

an ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence[,]" but he must set forth the specific evidence upon which he relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

As part of his evaluation of Claimant's subjective symptoms, the ALJ noted the two-step process set forth in Social Security Ruling 16-3p and the requirements under 20 C.F.R. §§ 404.1529, 416.929. (Tr. 21). He specifically summarized Claimant's subjective complaints based upon her function report and her testimony. (Tr. 22, 24). He also discussed the third—party function report completed by Claimant's son, finding it "generally informative" regarding Claimant's daily activities and "useful" for determining the severity of Claimant's symptoms. Although the ALJ found the objective medical evidence and the opinions of medical sources more persuasive, he clearly acknowledged the third-party function report in his decision. (Tr. 22). Moreover, the ALJ pointed out inconsistencies between the medical evidence and Claimant's reported symptoms of her mental limitations, considered her prior work history, discussed her daily activities, and her failure to comply with prescribed treatment. (Tr. 22-26).

The ALJ concluded that the evidence showed that even though Claimant had medically determinable impairments, they were not severe enough to preclude her from participating in substantial gainful activity and Claimant could function within the given RFC

14

without significant exacerbation of her symptoms. (Tr. 26). His evaluation of Claimant's subjective complaints was linked to the evidence and included specific reasons for the weight given to Claimant's symptoms. This Court finds no error in the ALJ's evaluation of Claimant's symptoms.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 15th day of August, 2022.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE